# JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>　　　　　Plaintiff,<br>　v.<br>KEYVIEW LABS, INC.,<br>BRAIN RESEARCH LABS, LLC,<br>20/20 BRAIN POWER PARTNERS, LLC,<br>20/20 BRAIN POWER FOUNDERS, LLC,<br>MEDHEALTH DIRECT, INC.,<br>GEORGE REYNOLDS, a/k/a Josh Reynolds and Joshua Reynolds, and<br>JOHN ARNOLD,<br>　　　　　Defendants. | Docket No.: 8:15-cv-1047<br><br>**STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AS TO KEYVIEW LABS, INC.** |

1       Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). The Commission and Defendant KeyView Labs, Inc. ("KeyView") agreed in the Stipulation to Enter Final Judgment and Order For Permanent Injunction and Other Equitable Relief ("Order") to entry of this Order, and requested that the Court enter the same to resolve all matters in dispute in this action.

      **THEREFORE, IT IS ORDERED** as follows:

## FINDINGS

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Defendants participated in deceptive acts or practices and false advertisements in violation in violation of Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, in connection with the labeling, advertising, marketing, distribution, and sale of Procera AVH, a dietary supplement.

3. Defendant KeyView neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendant KeyView admits the facts necessary to establish jurisdiction.

4. Defendant KeyView waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5. Defendant KeyView waives all rights to appeal or otherwise challenge or contest the validity of this Order. This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law.

6. Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are binding upon Defendant KeyView, and its officers, agents, representatives, employees, and all other persons or entities in active concert or

participation with such Defendant, who receive actual notice of this Order by personal service or otherwise.

7. The paragraphs of this Order shall be read as the necessary requirements of compliance and not as alternatives for compliance, and no paragraph serves to modify another paragraph unless expressly so stated.

## ORDER

## DEFINITIONS

For the purpose of this Order:

1. "Advertising" and "promotion" mean any written or verbal statement, illustration, or depiction designed to effect a sale or create interest in the purchasing of products or services, whether it appears in a brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book insert, free standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of purchase display, packaging, package insert, label, film, slide, radio, television or cable television, audio program transmitted over a telephone system, program-length commercial ("infomercial"), the Internet, email, press release, video news release, or in any other medium.

2. "Commerce" means as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

3. "Covered Product" means any dietary supplement, food, or drug, including, but not limited to, Procera AVH.

4. "Defendant KeyView" means Keyview Labs, Inc. and its successors and assigns.

5. "Defendants" means all of the Defendants, individually, collectively, or in any combination.

6. "Endorsement" means as defined in 16 C.F.R. § 255.0(b).

7. "Essentially Equivalent Product" means a product that contains the identical ingredients, except for inactive ingredients (e.g., binders, colors, fillers,

1  excipients), in the same form and dosage, and with the same route of
2  administration (e.g., orally, sublingually), as the Covered Product; provided that
3  the Covered Product may contain additional ingredients if reliable scientific
4  evidence generally accepted by experts in the relevant field indicates that the
5  amount and combination of additional ingredients is unlikely to impede or inhibit
6  the effectiveness of the ingredients in the Essentially Equivalent Product.

7      8.   "Food" and "drug" mean as defined in Section 15 of the FTC Act, 15
8  U.S.C. § 55.

9      9.   "Person" means a natural person, an organization, or other legal
10 entity, including a corporation, partnership, sole proprietorship, limited liability
11 company, association, cooperative, or any other group or combination acting as an
12 entity.

13     10.   "Pre-existing Procera AVH Continuity Program" means any
14 continuity program, such as Defendant KeyView's Procera Autoship Program, in
15 which KeyView automatically ships Procera AVH to a consumer or automatically
16 renews an agreement to purchase Procera AVH, and charges the consumer, that is
17 or was in effect prior to the date of this Order.

18     11.   "Reliably Reported," for a human clinical test or study ("test"), means
19 a report of the test has been published in a peer-reviewed journal, and such
20 published report provides sufficient information about the test for experts in the
21 relevant field to assess the reliability of the results.

22     12.   The term "including" in this Order means "including without
23 limitation."

## I.

## PROHIBITED REPRESENTATIONS: MEMORY- AND COGNITION-RELATED CLAIMS

**IT IS ORDERED** that Defendant KeyView, its officers, agents, and employees, and all other persons in active concert or participation with it, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are hereby permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation that such product:

      A.     Improves or restores memory, mental clarity, focus, concentration, mood, or other cognitive or mental function; or

      B.     Stops or reverses cognitive or mental decline;

unless the representation is non-misleading and, at the time of making such representation, Defendant KeyView possesses and relies upon competent and reliable scientific evidence to substantiate that the representation is true.  For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of the Covered Product or of an Essentially Equivalent Product that is sufficient in quality and quantity, based on standards generally accepted by experts in memory or cognitive function, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  Such testing shall be randomized, double-blind, and placebo-controlled; and be conducted by researchers qualified by training and experience to conduct such testing.  In addition, all underlying or supporting data and documents generally accepted by experts in memory or cognitive function as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.  Defendant KeyView shall have the burden of proving that a product satisfies the definition of an Essentially Equivalent Product.

## II.

## PROHIBITED REPRESENTATIONS:  OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Defendant KeyView, its officers, agents, and employees, and all other persons in active concert or participation with it, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, directly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation, other than representations covered under Section I of this Order, about the health benefits, performance, or efficacy of any Covered Product, including, but not limited to, any representation that any Covered Product prevents memory decline or other cognitive or mental decline, unless the representation is non-misleading, and, at the time of making such representation, Defendant KeyView possesses and relies upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by qualified persons; (2) that are generally accepted in the profession to yield accurate and reliable results; and (3) as to which, when they are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in Section III of this Order are available for inspection and production to the Commission.

## III.

## PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendant KeyView relies to substantiate any claim covered by this Order, Defendant KeyView shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including, but not necessarily limited to:

  A. All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

  B. All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

  C. Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

  D. All documents referring or relating to any statistical analysis of any test data, including, but not limited to, any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

  E. All documents referring or relating to the sponsorship of the test, including all communications and contracts, between any sponsor and the test's researchers.

  *Provided, however*, the preceding preservation requirement shall not apply to a Reliably Reported test, unless the test was conducted, controlled, or sponsored,

in whole or in part (1) by any Defendant;  (2) any Defendant's officers, agents, representatives, or employees;  (3) any other person or entity in active concert or participation with any Defendant; (4) any person or entity affiliated with or acting on behalf of any Defendant;  (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For any test conducted, controlled, or sponsored, in whole or in part, by any Defendant, Defendant KeyView must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants.  These procedures shall be documented in writing and shall contain administrative, technical, and physical safeguards appropriate to Defendants' size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## IV.

## PROHIBITED REPRESENTATIONS REGARDING TESTS OR STUDIES

**IT IS FURTHER ORDERED** that Defendant KeyView, its officers, agents, and employees, and all other persons in active concert or participation with it, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, in any manner, expressly or by implication, including through the use of any product or program name, endorsement, depiction, or illustration:

A. The existence, contents, validity, results, conclusions, or interpretations of any test, study, or research; or

B. That the benefits of such product are scientifically proven.

## V.
## FDA APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order shall prohibit Defendant KeyView from:

    A.    Making any representation for any drug that is permitted in labeling for such drug under any tentative or final monograph promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration; and

    B.    Making any representation for any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## VI.
## PROHIBITED REPRESENTATIONS ABOUT THE EXPERTISE OF ENDORSERS

**IT IS FURTHER ORDERED** that Defendant KeyView, its officers, agents, and employees, and all other persons in active concert or participation with it, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, in any manner, expressly or by implication, including through the use of any product or program name, endorsement, depiction, or illustration, that any person is an expert with respect to the endorsement message provided by that person.

# VII.

## CANCELLATION OF PRE-EXISTING CONTINUITY PROGRAMS

**IT IS FURTHER ORDERED** that Defendant KeyView, its officers, agents, and employees, and all other persons in active concert or participation with it, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of Procera AVH are hereby permanently restrained and enjoined from continuing to cause any charges to be made or any payments to be billed to any consumer, or to cause collection of, or attempts to collect, payment, directly or indirectly, from any consumer through any Pre-existing Procera Continuity Program.

# VIII.

## MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A. Judgment in the amount of Sixty-One Million One Hundred Thousand Dollars ($61,100,000) is entered in favor of the Commission against Defendant KeyView as equitable monetary relief.

B. In partial satisfaction of the judgment, One Million Four Hundred Thousand Dollars ($1,400,000) currently held in escrow funds under the Escrow Agreement dated April 14, 2014 between KeyView Labs, Inc. and Brain Research Labs, LLC, and Escrow Agent Blalock Walters P.A. ("Blalock Escrow Agreement") and under the Escrow Agreement dated December 28, 2012 between KeyView Labs, Inc., Brain Research Labs, LLC, and Escrow Agent Trenam, Kemker, Scharf, Barkin, Frye, O'Neill, and Mullis ("TK Escrow Agreement") shall be used as follows:

    1. Within seven days of entry of this Order, Defendant Keyview shall pay to the Commission One Million Dollars ($1,000,000) or provide written notice to Escrow Agent Blalock Walters P.A. directing that all Escrow Funds in the

Blalock Escrow Agreement shall be immediately paid to the Commission, as provided for in Article 1 of the Blalock Escrow Agreement. Such payment shall be made by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

      2. Subject to Subparagraph VIII.B.3, below, the remaining Four Hundred Thousand Dollars ($400,000) shall be reserved exclusively for payment to the Office of the District Attorney Santa Cruz County, Santa Cruz, California ("Santa Cruz") pursuant to any judgment that is entered in *People of the State of California v. Brain Research Labs, LLC and Joshua Reynolds a/k/a George Reynolds.*

      3. If, for any reason, such payment is not made within seven days of entry of this Order to Santa Cruz pursuant to *People of the State of California v. Brain Research Labs, LLC, and Joshua Reynolds a/k/a George Reynolds,* Defendant Keyview shall, within 15 days of entry of this Order, pay the Commission Four Hundred Thousand Dollars ($400,000) or provide written notice to Escrow Agent Trenam, Kemker, Scharf, Barkin, Frye, O'Neill, and Mullis that all Escrow Funds under the TK Escrow Agreement shall be immediately paid to the Commission, as provided for in Article 1 of the TK Escrow Agreement. Such payment shall be made by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

  C. Upon completion of Section VIII. B, the remainder of the monetary judgment is suspended, subject to Section VIII. D, below.

  D. The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and related documents (collectively "financial attestations") submitted to the Commission, namely:

      1. the Financial Statement of Defendant KeyView Labs, Inc. signed on June 5, 2014, including the attachments [collectively bates numbered

KVL-FTC 000001 through KVL-FTC 000090];

       2.    the additional financial documentation provided by Defendant KeyView on August 26, 2014 [collectively bates numbered KVL-FTC-00091 through KVL-FTC-1071];

       3.    the additional financial documentation provided by Defendant KeyView on April 3, 2015 [bates numbered KVL-FTC-001944];

       4.    the Escrow Agreement, dated April 14, 2014, between KeyView Labs, Inc. and Brain Research Labs, LLC, and Escrow Agent Blalock Walters P.A.; and

       5.    the Escrow Agreement, dated December 28, 2012, between KeyView Labs, Inc., Brain Research Labs, LLC, and Escrow Agent Trenam, Kemker, Scharf, Barkin, Frye, O'Neill, and Mullis.

    E.    The suspension of judgment will be lifted as to Defendant KeyView if, upon motion by the Commission, the Court finds that Defendant KeyView failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial attestations identified above.

    F.    If the suspension of the judgment is lifted, the judgment becomes immediately due as to Defendant KeyView in the amount specified in Subsection A, above less any payment previously made pursuant to this Section plus interest computed from the date of entry of this Order.

    G.    Defendant KeyView relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

    H.    The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any

bankruptcy case.

I. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

J. Defendant KeyView acknowledges that its Taxpayer Identification Number (Social Security Number or Employer Identification Number), which Defendant KeyView must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

K. All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant KeyView's practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendant KeyView has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## IX.

## COOPERATION WITH PLAINTIFF

**IT IS FURTHER ORDERED** that Defendant KeyView must fully cooperate with the Commission in this case and in any investigation related to or associated with the transactions or occurrences that are the subject of the Commission's Complaint. Defendant KeyView must provide truthful and

1 complete information, evidence, and testimony. Defendant KeyView
2 acknowledges, understands, and agrees that such cooperation shall include, but not
3 be limited to, the following:
4     A. Causing its officers, employees, representatives, or agents to appear
5 for interviews as may reasonably be requested by a Commission representative;
6     B. Responding to all reasonable inquiries by a Commission
7 representative;
8     C. Providing all documents, records, or other tangible evidence
9 reasonably requested by a Commission representative;
10     D. Providing truthful declarations, affidavits, certifications, and written
11 testimony that may be reasonably requested by the Commission;
12     E. Causing its officers, employees, representatives, or agents to appear
13 and provide truthful testimony at any trial, deposition, or other proceeding without
14 the service of a subpoena; and
15     F. Releasing any KeyView current or former employees, representatives,
16 or agents from any confidentiality or other agreements that might limit their ability
17 to appear for interviews, provide truthful declarations, affidavits, certifications, and
18 written testimony, or appear and provide truthful testimony at any trial, deposition,
19 or other proceeding.

## X.
## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendant KeyView, its officers, agents, employees, and all other persons in active concert or participation with it, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

    A. Failing to provide sufficient consumer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Defendant

KeyView must provide it, in the form prescribed by the Commission, within 14 days;

      B.    Selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, credit card number, e-mail address, or other identifying information of any consumer who paid any money to Defendant KeyView in connection with the purchase of Procera AVH and was obtained prior to entry of this Order, *Provided, however*, that this subsection does not prohibit the transfer of such customer information to any successor and assign, *provided further,* that customer information may be disclosed, to the extent requested by a government agency or as required by law, regulation, or court order; or

      C.    Using such customer identifying information to distribute any advertising or other marketing material or any packaging that does not comply with Sections I through VI of this Order.

## XI.
## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendant KeyView obtain acknowledgments of receipt of this Order:

      A.    Defendant KeyView, within seven days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

      B.    For ten years after entry of this Order, Defendant KeyView must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within seven days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

  C. From each individual or entity to which Defendant KeyView delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XII.
## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant KeyView make timely submissions to the Commission:

  A. One hundred and eighty (180) days after entry of this Order, Defendant KeyView must submit a compliance report, sworn under penalty of perjury. Defendant KeyView must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of Defendant KeyView's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the products and services offered, the means of advertising, marketing, and sales, and the involvement of any other current or former Defendant, which Defendant KeyView must describe if it knows or should know due to its own involvement; (d) describe in detail whether and how Defendant KeyView is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission;

  B. For 10 years after entry of this Order, Defendant KeyView must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in: (a) any designated point of contact; or (b) the structure of Defendant KeyView or any entity that it has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.     Defendant KeyView must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, D.C. 20580.  The subject line must begin: *FTC v. KeyView Labs, Inc., et al*.

## XIII.
## RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that Defendant KeyView must create certain records for 10 years after entry of the Order, and retain each such record for five years.  Specifically, Defendant KeyView must create and retain the following records:

A.     Accounting records showing the revenues from all products or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.     Personnel records showing, for each person providing services in connection with any Covered Product, whether as an employee or otherwise, that person's:  name, addresses, telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

17

C.	Complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.	All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.	A copy of each unique advertisement or other marketing material for any Covered Product disseminated since the date of entry of this Order.

## XIV.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendant KeyView's compliance with this Order:

A.	Within 14 days of receipt of a written request from a representative of the Commission, Defendant KeyView must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying. The Commission also is authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.	For matters concerning this Order, the Commission is authorized to communicate directly with Defendant KeyView. Defendant must permit representatives of the Commission to interview any employee or other person affiliated with such Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.	The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XV.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED:**

**DATED July 09, 2015**  _____
**UNITED STATES DISTRICT JUDGE**